**In the Matter of Manuel Guillermety MENDEZ and Ana Maria Ariano Mallol, Debtors.**

**Anne Halvorsen and Robert Halvorsen, Jr., Plaintiffs,**

**v.**

**Manuel Guillermety Mendez, Ana Maria Ariano Mallol and B.H.T., S.E., Defendants.**

Bankruptcy No. 95–03177.
Adversary No. 98–0091.

United States Bankruptcy Court, D. Puerto Rico.

March 16, 2000.

Lawrence E. Duffy, Santurce, Puerto Rico, for plaintiffs.

Irving K. Hernández, Rio Piedras, Puerto Rico, for defendants.

## OPINION AND ORDER

SARA DE JESUS, Bankruptcy Judge.

Before the court are Robert and Anne Halvorsen's (the Halvorsens) opposed request for summary judgment and Debtors' motion to dismiss the complaint pursuant to Fed.R. of Bankr.P. 7012 disputed by the Halvorsens. For the reasons stated below we deny the Halvorsens' motion for summary judgment and grant Debtors' motion to dismiss this proceeding unless the Halvorsens amend the complaint.

**1.** When the one of the original plaintiffs and creditor Mr. Norman Halvorsen passed away, the local Court substituted Dr. Robert Halvorsen as his sole and universal heir.

## BACKGROUND

BHT, S.E. (BHT), is a special partnership organized under the laws of Puerto Rico mainly to promote real estate development. Debtors are the sole proprietors of BHT. Debtors filed a petition under Chapter 13 of the Code on May 23, 1995. BHT filed its petition under Chapter 11 on October 23, 1995. At that time the Halvorsens were judgment creditors of both Manuel Guillermety Méndez and BHT, owing $427,400.00.[1] During the course of BHT case, the stay was lifted, realty encumbered in favor of the Halvorsens was sold, and the proceeds were applied in partial payment of this debt.

Two significant events occurred in 1997: we dismissed BHT's case and converted Debtors' case to Chapter 11. Later, we confirmed Debtors' Second Amended Plan of Reorganization which contained the following relevant clause.

> Upon confirmation of the plan and vesting of all assets, the Debtor will be discharged of all claims and liabilities arising prior to the filing of the petition for relief pursuant to 11 U.S.C. § 1141. *The confirmation of the Plan shall operate as of the Effective date of the Plan to enjoin any action against a guarantor or co-obligor of any claim settled or satisfied under the terms of the Plan during the Term of the Plan. Confirmation of the plan shall satisfy all claims or causes of action arising out of any claim settled and satisfied under the terms of the plan.* (Emphasis added.)[2]

The Halvorsens continued their efforts to collect the judgment in the state court against BHT by filing a motion to attach and sell realty and forbid its owner from selling it. Debtors opposed, claiming the Halvorsens were bound by the terms of the confirmed plan. This meant the plan enjoined the Halvorsens from enforcing

**2.** This provision is also found in Debtors' two previous plans.

the judgment against BHT as long as it was in effect and Debtors were in compliance. The State Court Judge (the Judge) "paralyzed" the Halvorsens execution of judgment against BHT. The Halvorsens did not appeal this ruling. Instead, they filed this suit for declaratory judgment seeking to clarify they were not bound by the cited clause in the confirmed plan, alternately seeking to revoke the order of confirmation claiming Debtors obtained confirmation through fraudulent misrepresentations upon which they relied. Debtors countered arguing we should dismiss the complaint because: (1) Robert Halvorsen lacks standing to pursue this suit; (2) this court lacks subject matter jurisdiction; and (3) Debtors do not state a claim upon which relief could be granted.[3] The parties agree there are no material facts in controversy.[4]

### DISCUSSION

Before tackling the merits, we must first confirm the existence of such rudiments as standing and jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Hardemon v. City of Boston*, 144 F.3d 24 (1st Cir.1998); *Berner v. Delahanty*, 129 F.3d 20 (1st Cir.1997).

#### A. Standing

Debtors questioned Robert Halvorsen's standing because he had not accredited his right to substitute Norman Halvorsen as a plaintiff in this proceeding.

■ Robert Halvorsen responded by submitting a certified copy of Norman Halvorsen's protocolized, holographic will, designating him as an heir. Hence, his

3. The other defendant in this proceeding, BHT, after voluntarily submitting to the jurisdiction of this court, joined the Debtors in the request for dismissal of the complaint.

4. Summary judgment is warranted when the record, viewed most favorably to non moving party, reveals that there is no genuine dispute as to any material fact and moving party is entitled to judgment as a matter of law. *Celo-*

substitution as a party-plaintiff is proper and we deny Debtors' first ground for dismissal.

#### B. Jurisdiction

BHT joins Debtors' two-pronged challenge to our subject matter jurisdiction. First, they claim we lack subject matter jurisdiction in a dispute between a reorganized debtor and a third party not in bankruptcy. Second, they assert that we cannot revisit the issue as it was previously decided by the State Court.

The Halvorsens oppose claiming we have original, nonexclusive jurisdiction to entertain this controversy pursuant to 28 U.S.C. § 1334(b), as execution of the judgment against BHT would modify Debtors' obligations under the confirmed plan and confirmation of a plan does not automatically divest a bankruptcy court from subject matter jurisdiction. The Halvorsens reinforce their argument by pointing to a clause in the confirmed plan where the bankruptcy court retains jurisdiction "to correct any defect, to cure any omission, or to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan".

We agree we have subject matter jurisdiction, but not based upon the cited clause. The reason we reject the plan's clause as our source of jurisdiction is expressed by Collier's treatise which states:

The propriety of a bankruptcy court considering matters related to a confirmed chapter 11 plan is often discussed in terms of whether either section 1142 or the terms of the plan provide the bankruptcy court with jurisdiction to consider the matter at issue. Yet nei-

*tex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *U.S. v. One Parcel of Real Property*, 960 F.2d 200 (1st Cir.1992); *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483 (1st Cir.1992); *NASCO, Inc. v. Public Storage Inc.*, 29 F.3d 28 (1st Cir.1994); *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994).

ther section 1142 nor the terms of a plan confer jurisdiction upon a bankruptcy court. Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334; this is so whether the matter at issue arises before or after confirmation of a plan. Confirmation does not alter the basic jurisdictional analysis applicable to bankruptcy courts. When a bankruptcy court is asked to consider a plan-related matter after confirmation, the court must, as a threshold matter, determine whether it has jurisdiction under 28 U.S.C. § 1334. To the extent jurisdiction exists, the court ought then to consider whether abstention is appropriate and whether the resolution of the matter at issue is better left to a court other than the bankruptcy court that administered the chapter 11 case.

8 *Collier on Bankruptcy* § 1142.04[2], pp. 1141–7 (15th ed. rev.) (1998).

■ Thus, we hold that when resolving either pre or post confirmation disputes, our test for determining subject matter jurisdiction remains constant: whether the proceedings before us arise in a case under title 11 or, whether these are related to a case under title 11.[5] We acknowledge confirmation limits disputes that satisfy this test, as property of the estate usually vests in the debtor and the estate in bankruptcy ceases to exist. 11 U.S.C. § 1141(b). Yet, here we agree with the Halvorsens, the act of confirming this plan did not automatically divest us from subject matter jurisdiction over this dispute seeking an interpretation of a plan clause. Such a ruling would accord relief in a matter which either arises in a case under title 11, or is related to a bankruptcy case.[6] Therefore, we assert our jurisdiction in this proceeding recognizing we share it with State Courts.

This brings us to Debtor's second challenge. Did the Judge already decide this dispute? Debtors argue we are "prevented from revisiting the issue [as it was] decided by the State Court regardless whether said decision was erroneous". The Halvorsens cannot invoke our jurisdiction to obtain a finding that the Judge erred when interpreting and/or applying federal law to disputes the Halvorsens' renew in this proceeding. The Halvorsens ask we declare they are not bound by the cited provision and they never consented to its inclusion in the confirmed plan.

■ The Rooker–Feldman doctrine traces its origins to two U.S. Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine recognizes that U.S. district courts are courts of original, not appellate jurisdiction. Thus, "lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions". *Wang v. New Hampshire Board of Registration in Medicine*, 55 F.3d 698, 703 (1st Cir.1995); *Hill v. Town of Conway*, 193 F.3d 33 (1st Cir.1999).

■ "Even if jurisdiction would otherwise exist under 28 U.S.C. § 1334 over a given dispute, a bankruptcy court may not exercise jurisdiction over that dispute if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment." Bluebond, Sheri, *Recent Developments in Jurisdiction, Venue, Abstention, Remand, Removal, Withdrawal of the Reference, Jury Trials and Appeals*, 767 PLI/Comm. 9 (1998).

---

**5.** 28 U.S.C. § 1334(b) states:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the districts courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**6.** *In re Santa Clara County Child Care Consortium*, 223 B.R. 40 (1st Cir. BAP 1998).

In *Snider v. City of Excelsior Springs, Missouri,* 154 F.3d 809, 811–812 (8th Cir.1998), the court explained:

> Rooker–Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding. [cit. omitted] *Deciding whether Rooker–Feldman bars the plaintiffs' federal suit therefore requires that we determine what the state court held and whether the relief that the plaintiffs requested in their federal action would void the state court's decision or would require us to determine that the decision was wrong.* (Emphasis added.)

The arguments of both parties rely solely on the Judge's ruling "paralyzing" execution of the judgment. The parties produced documents showing the Judge ruled after considering motions which were similar, if not identical, to those now before us. Her ruling does not say she stays the execution so that we may interpret the plan's clause. In fact, she does not say she abstains from interpreting the clause. Rather, she rules. First, the Judge states the record before her shows the bankruptcy court has taken judicial action pursuant to federal bankruptcy law over a party who is indispensable in the matter pending before her. Next, she Paralyzes the execution of the judgment, dismissing the case without prejudice. She then reserves jurisdiction to reopen the case at the request of a party in interest, should her order of paralyzation be vacated. Lastly, the Judge ruled that should the Halversons' claims be totally adjudicated in bankruptcy and become extinct, her order dismissing the case would become final, regardless of any notice received by the local court.

When the Judge ruled, the only active defendant before her was BHT. When staying Halversons' motion to execute the judgment against BHT and dismissing the case, the Judge implied BHT was a guarantor or co obligor enjoined from executing the judgment by the plan's clause. We find no other plausible explanation for her action paralyzing the Halvorsens' attempts to collect the judgement. The automatic stay was not in effect and there were no other efforts to execute the judgment against the Debtors in violation of the confirmed plan. 11 U.S.C. § 1141(d)(1)(A).

Thus, we disagree with the Halvorsens' who view the Judge's order as "decid[ing] no issues and merely stay[ing] the proceeding on the assumption a stay is in effect and refers the controversy raised by the intervention of Mr. Guillermety to this court for resolution", and conclude the Rooker–Feldman doctrine precludes us from revisiting the dispute, raised and resolved by the local court, as granting the Halvorsens' request would void the state court's decision, or would require us to determine that the decision was wrong.

C. Halversons' request for a revocation of the order confirming the plan

The Halvorsens ask that we revoke the order of confirmation because Debtors' obtained it through fraudulent misrepresentations, thereby dissolving the injunction forbidding collection efforts against BHT while Debtors are complying with the plan.

We have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 1144 and the Rooker–Feldman doctrine does not preclude this ruling as the Judge did not address this question in her ruling.[7]

Code section 1144 provides that on the request of a party in interest, made at any time prior to 180 days after the date of entry of a confirmation order, "the court may revoke such order if and only if such order was procured by fraud". 11 U.S.C. § 1144. This section does not define fraud. *Tenn–Fla Partners v. First Union National Bank of Florida,* 229 B.R. 720,

---

7. See the third paragraph of the state court's order clearly showing the Judge abstained from deciding whether the injunction contained in Debtors' confirmed plan should be vacated.

729 (W.D.Tenn.1999). "Under common law, maintaining an action for fraud typically requires the plaintiff to establish several elements such as (i) the defendant made a false statement of a material fact, (ii) the defendant either knew the statement was false or made the statement with reckless disregard as to whether it was true or false, (iii) the plaintiff relied on the fraud, (iv) such reliance was justifiable, and (v) the plaintiff was damaged by the fraud." 8 *Collier on Bankruptcy* § 1144.05[1], pp. 1144–9 (15th ed. rev.).

█ The Halvorsens' allegations are not clear. We understand they ask us to revoke the order confirming the plan as Debtors fooled them into thinking the plan did not forbid them from collecting the judgment against BHT. Halversons claim Debtors made such a statement in a reply to their objection to confirmation, and relying on this assertion, they withdrew their opposition to the plan. Halversons are referring to this statement: "[the Halvorsens] must first exhaust all collection remedies against BHT, S.E. and thus the liability of the debtor is contingent and is not born until all remedies against BHT, S.E. are exhausted". We note the Halvorsens cite this statement out of context and do not state it is false. See Exhibit 7 to their motion for summary judgment and *FDIC v. Consolidated Mortgage and Finance Corp.*, 735 F.Supp. 456 (D.P.R.1990). Under these circumstances, Halvorsens are missing the first two elements needed by us to find Debtors obtained confirmation of the plan through fraud.

█ Moreover, the clause was present in the first two versions of the plan proposed by Debtors. Debtors made no attempt to conceal the clause in the third version that was ultimately confirmed. The Halvorsens were active participants in this bankruptcy case. They were represented by able counsel. A debtor may include a debt in a plan for which it is jointly, severally, or even contingently liable. If a creditor disagrees with the treatment afforded by the plan, then it must defend its interests by objecting to the confirmation, or seeking clarification of the plan.[8]

█ The evidence produced by the parties shows the Halvorsens did not meet their burden of establishing the elements of fraud, nor plead facts with the particularity required by the law. Fed. R.Bankr.P. 7009(b).[9] Therefore, the Halvorsens are granted thirty days to amend the complaint, or Debtors' request for dismissal is granted.

---

8. A confirmed plan of reorganization is a new and binding contract, amongst debtor and its creditors that is sanctioned by the bankruptcy court. 11 U.S.C. § 1141(a); *In re Sergi*, 233 B.R. 586 (1st Cir. BAP 1999).

9. "In the second place, fraud and misrepresentation must, under the Civil Rules, be pleaded with specificity. Fed.R.Civ.P. 9(b); see also *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228–29 (1st Cir.1980); *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 766 (D.R.I.1984). This rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations. *McGinty*, 633 F.2d at 228." *Powers v. Boston Cooper Corp.*, 926 F.2d 109–110 (1st Cir.1991).