In re Beatrice M. HEGHMANN,
Debtor.

Beatrice M. Heghmann, Appellant,

v.

Ronald Indorf and Djamel
Hafiani, Appellees.

BAP No. 03–073.
Bankruptcy No. 03–12162–MWV.

United States Bankruptcy Appellate Panel
of the First Circuit.

Nov. 3, 2004.

Robert A. Heghmann, York Beach, ME, on brief for Appellant.

Richard C. Bell, on brief for Appellee, Ronald Indorf.

Sean P. Joyce, Portland, ME, on brief for Appellee, Djamel Hafiani.

Before LAMOUTTE, VOTOLATO and HAINES, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Chief Judge.

The debtor, Beatrice Heghmann, appeals from the bankruptcy court's August 19, 2003 order regarding her Motion for Contempt against Ronald Indorf and Djamel Hafiani, and her Motion for an Order Implementing the Automatic Stay. In the first motion, the debtor sought a finding of contempt against Appellee Djamel Hafiani and his attorney, Ronald Indorf, for alleged violations of the automatic stay. The second motion sought an order allowing the debtor to return to her previous residence and requiring that her possessions be returned to her by her previous landlord, Djamel Hafiani. The bankruptcy court concluded that Mr. Hafiani (but not Attorney Indorf) had violated the automatic stay by selling some of the debtor's property at postpetition yard sales and ordered him to pay actual damages of $1,200 under 11 U.S.C. § 362(h). The bankruptcy court also denied the debtor's request to return to her previous residence. We affirm.

## BACKGROUND

### I. Eviction Proceedings and Robert Heghmann's Chapter 13 Petition

Robert and Beatrice Heghmann leased residential property owned by Appellee Djamel Hafiani. In February 2003, Mr. Hafiani filed an eviction proceeding against the Heghmanns in the Portsmouth, New Hampshire District Court (the "State Court") for failure to pay rent. On March 3, 2003, after a hearing, the State Court ordered the Heghmanns to pay rental arrears of $5,700 to Mr. Hafiani by March 15, 2003, or a writ of possession would issue as of March 17, 2003, without further hearing.

The Heghmanns neither paid the $5,700 nor appealed the judgment. Instead, on March 13, 2003, Robert Heghmann filed a voluntary Chapter 13 petition. Notwithstanding the filing of the bankruptcy petition, on March 17, 2003, the State Court issued a Notice of Default Judgment and a Writ of Possession in accordance with its March 3rd order.

On May 19, 2003, Robert Heghmann filed a motion in the State Court to quash the writ of possession, alleging that the writ was void because it issued in violation of the automatic stay. However, on May 21, 2003, the bankruptcy court dismissed Robert Heghmann's Chapter 13 case for failure to file the required bankruptcy schedules and Chapter 13 plan. Accordingly, on May 23, 2003, the State Court denied the Motion to Quash and issued a new Writ of Possession in accordance with its March 3rd order. The next day, the Heghmanns were evicted from the premises. The Heghmanns did not appeal.

On May 22, 2003, the Heghmanns filed a complaint in the United States District Court for the District of New Hampshire alleging violations of the automatic stay by Mr. Hafiani and seeking a temporary restraining order. On May 28, 2003, the district court issued an order sua sponte dismissing the complaint, finding that it lacked subject matter jurisdiction. The Heghmanns did not appeal.

On June 2, 2003, Robert Heghmann filed two motions with the bankruptcy court: (1) a motion to "set aside" the dismissal of his bankruptcy petition, and (2) a motion for contempt against Mr. Hafiani and his counsel, Attorney Ronald Indorf, for al-

leged violations of the automatic stay. The bankruptcy court denied both motions, concluding that Robert Heghmann had not established sufficient grounds to overturn the dismissal and that dismissal rendered moot the motion for contempt. Robert Heghmann did not appeal these orders, nor did he appeal the dismissal of his Chapter 13 case.

## II. Beatrice Heghmann's Bankruptcy Proceedings

On June 19, 2003, Robert Heghmann filed a voluntary Chapter 13 petition on behalf of his wife, Beatrice Heghmann (hereafter, the "Debtor").[1] Thereafter, the Debtor filed three motions: (1) a Motion for Order Implementing Automatic Stay (the "Motion to Implement Stay"), (2) a Motion for Contempt, and (3) an Application for Partial Relief from Stay (the "Motion for Partial Stay Relief"). The Motion to Implement Stay sought an order allowing the Debtor to return to her previous residence and requiring Mr. Hafiani to return the Debtor's possessions. The second motion, although styled as a motion for contempt, alleged violations of the automatic stay by Mr. Hafiani and Attorney Indorf and sought punitive and compensatory damages.[2] The Motion for Partial Stay Relief sought relief from the automatic stay to allow the Debtor to pursue a federal civil action against Mr. Hafiani and Attorney Indorf.

On August 12, 2003, the bankruptcy court held a hearing on the three motions, at which Robert Heghmann and Mr. Hafiani apparently testified.[3] On August 19, 2003, the bankruptcy court entered one order with respect to both the Motion for Contempt and the Motion to Implement Stay (the "Order"). On that same day, the bankruptcy court also issued an order denying the Motion for Partial Relief without further discussion.

In the Order, the bankruptcy court refused to consider any pre-petition stay violations.[4] Rather, the bankruptcy court focused on post-petition actions taken by Mr. Hafiani as landlord in handling the Debtor's personal property. The bankruptcy court concluded that Mr. Hafiani had "pleaded" with the Heghmanns to pick up their personal property, making numerous telephone calls to the Heghmanns and even leaving the premises open several times. Finding Mr. Hafiani's testimony to be credible, the bankruptcy court concluded that there were no stay violations until

---

**1.** Robert Heghmann is a licensed attorney and represents Beatrice Heghmann in this matter.

**2.** The Debtor argued that Mr. Hafiani and Attorney Indorf repeatedly violated the automatic stay in their efforts to execute the Writ of Possession during the course of Robert Heghmann's bankruptcy case and in evicting the Heghmanns after Robert Heghmann's case was dismissed. As noted above, the Heghmanns were evicted on May 24, 2003, prior to the commencement of the instant case. Consequently, the majority of the actions at issue occurred prior to the commencement of the instant case.

**3.** The Debtor has not provided the Panel with a transcript of the hearing.

**4.** The bankruptcy court stated:

1. An alleged violation of the automatic stay may not be prosecuted in a subsequent bankruptcy case.

2. The debtors in the two cases are different.

3. The ten day stay provided in Bankruptcy Rule 7062 is not applicable to an order dismissing the case. See Fed. R. Bankr.P. 9014, which provides that Bankruptcy Rule 7062 is not applicable to a contested matter. Thus, this eviction was in place prior to the filing of the instant petition and is not subject to challenge in this proceeding.

*See* App. at 37.

Mr. Hafiani sold some of the Debtor's property at yard sales on July 12 and 19, 2003. Accordingly, the bankruptcy court ordered him to pay damages of $1,200. The bankruptcy court also concluded that although Mr. Hafiani's actions were taken on the advice of his counsel, Attorney Indorf did not violate the automatic stay as he did not take any actions against the estate. This appeal ensued. Subsequently, the Debtor's bankruptcy case was dismissed for failure to file the required schedules and Chapter 13 plan.

### JURISDICTION

 A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.' " *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

 Generally, orders finding violations of the automatic stay and imposing sanctions are final appealable orders. *See generally Washington Mutual v. Fritz (In re Fritz)*, 225 B.R. 218 (E.D.Wash.1997); *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. 698 (D.N.H.1993) (order finding violation of automatic stay and imposing attorneys' fees is final appealable order); *Diviney v. NationsBank, N.A. (In re Diviney)*, 225 B.R. 762 (10th Cir. BAP 1998) (same).

### STANDARD OF REVIEW

 Appellate courts reviewing an appeal from the bankruptcy court generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). A bankruptcy court's determination that the automatic stay has been violated involves a question of law that is subject to *de novo* review. *See Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 822 (1st Cir. BAP 2002); *see also Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973 (1st Cir.1997). Moreover, a bankruptcy court's assessment of damages for violations of the automatic stay is reviewed for an abuse of discretion. *See Ocasio*, 272 B.R. at 822 (citations omitted).

> Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Colon v. Rivera (In re Colon)*, 265 B.R. 639 (1st Cir. BAP 2001) (citations omitted).

### ISSUES ON APPEAL

On appeal, the Debtor primarily argues that: (1) the bankruptcy court erred by not considering evidence of pre-petition stay violations; (2) the bankruptcy court erred in converting her motion for contempt into a motion for damages under

§ 362(h); (3) the bankruptcy court erred in denying her motion for contempt against Attorney Indorf and Mr. Hafiani; and (4) the bankruptcy court abused its discretion in failing to "implement" the automatic stay to allow the Debtor to return to her previous residence.

## *DISCUSSION*

### I. Pre–Petition Violations of the Automatic Stay

The Debtor argues that the bankruptcy court erred by not considering evidence of prepetition stay violations, specifically the State Court's issuance of a writ of possession and the resulting eviction. We disagree. First, contrary to the Debtor's assertions, the writ of possession and subsequent eviction did not violate the automatic stay as no stay was in place at that time—Robert Heghmann's case had been dismissed and Beatrice Heghmann's case had not yet been filed. *See Soares*, 107 F.3d at 975 (the automatic stay is triggered by the filing of a bankruptcy petition). Second, the Debtor does not have standing to assert pre-petition stay violations in her subsequent bankruptcy case. Third, the Debtor is barred from challenging the State Court proceedings by the doctrine of res judicata and the *Rooker–Feldman* doctrine.

### A. The Writ of Possession and Eviction

■ The Debtor argues that the State Court judgment and writ of possession violated the automatic stay since they were entered on March 17, 2003 (while Robert

Heghmann's case was pending), and, consequently, the judgment was void and the resulting eviction was illegal. *See* Appellant's Brief at 10. The Debtor is incorrect. The May 23rd Writ of Possession and resulting eviction were not based upon the March 17th order (which violated the automatic stay and was, therefore, void), but upon the original March 3rd order (which preceded Robert Heghmann's case). The March 3rd order, by its own terms, became final upon the Heghmanns' failure to tender payment. Therefore, although the automatic stay prohibited any execution on the March 3rd order while Robert Heghmann's case was pending, the stay lifted when the case was dismissed on May 21, 2003.[5]

■ Moreover, Bankruptcy Rule 7062 did not extend the automatic stay for ten days after the case was dismissed. *See FDIC v. Shearson–American Express, Inc.*, 996 F.2d 493, 497 (1st Cir.1993); *cert. denied*, 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); *Lugo v. de Jesús Saez (In re de Jesús Saez)*, 721 F.2d 848, 851–52 (1st Cir.1983). Bankruptcy Rule 7062, which stays any execution upon a judgment for a period of ten days after its entry, only applies in adversary proceedings. *See* Fed. R. Bankr.P. 9014. Clearly, bankruptcy case dismissals for failure to file required schedules and a plan are not adversary proceedings. *See de Jesús Saez*, 721 F.2d at 852. Therefore, Bankruptcy Rule 7062 is not applicable.

Since the bankruptcy court dismissed Robert Heghmann's petition on May 21, 2003, there was no stay in effect from that

---

**5.** Although the Bankruptcy Code is not specific as to when the bankruptcy estate terminates, the First Circuit has held that dismissal of the bankruptcy petition ordinarily terminates the estate and lifts the automatic stay. *See Massachusetts v. Pappalardo (In re Steenstra)*, 307 B.R. 732, 738 (1st Cir. BAP 2004)

(citing *Lugo v. de Jesús Saez (In re de Jesús Saez)*, 721 F.2d 848, 851 (1st Cir.1983)). Therefore, when a case is dismissed, the automatic stay terminates and property of the bankruptcy estate revests in the debtor. *See id.*

date until the filing of the Debtor's petition on June 19, 2003. *See Soares*, 107 F.3d at 975 (the automatic stay is triggered by the filing of a bankruptcy petition); *Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 113 (1st Cir.1994) (same). Accordingly, the May 23rd Writ of Possession did not violate the automatic stay and the May 24th eviction was valid.

## B. Debtor's Standing To Challenge Pre–Petition Stay Violations

■ The Debtor does not have standing, as a codebtor on the lease, to challenge pre-petition stay violations in her subsequent bankruptcy case.

Section 1301 provides for an automatic stay of action against a codebtor in Chapter 13 cases. The legislative history for this section shows that it was designed to protect debtors by insulating them from indirect pressures from their creditors exerted through friends or relatives that may have co-signed an obligation of the debtor. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6381. Even assuming, arguendo, that the Debtor had standing as a co-debtor to complain about stay violations while Robert Heghmann's case was pending, the co-debtor stay does not give her standing to complain about those stay violations in her *subsequent* bankruptcy case.

## C. Res Judicata

■ The Debtor is barred from challenging the State Court proceedings by the doctrine of res judicata. The doctrine of res judicata [6] bars all parties and their privies from relitigating issues which were raised or could have been raised in a previous action, once a court has entered a final judgment on the merits in the previous action. *See Shearson–Amer. Express*, 996 F.2d at 497 (citations omitted). The essential elements of res judicata are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits. *Id.* (citations omitted). "The normal rules of res judicata and collateral estoppel apply to the decisions of the bankruptcy courts." *Id.* Orders, judgments and decrees of the bankruptcy court from which an appeal is not timely taken are final, even if erroneous. *Id.* "While actions taken in violation of the automatic stay are often characterized as void and without effect, orders of the bankruptcy court modifying the stay or finding no

---

6. The "res judicata" doctrine is generally used inclusively, to refer either to claim preclusion or issue preclusion (i.e., collateral estoppel). *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30–31 (1st Cir.1994) (citing *Dennis v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.2d 893, 898 (1st Cir.1984)). The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. *Id.* (citing *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir.1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993)). Once these elements are established, claim preclusion also bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation. *Id.* (citing *Dennis*, 744 F.2d at 898).

The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation "between the parties, whether on the same or a different claim." *Id.* (citations omitted). When there is an identity of parties in subsequent actions, a party must establish four elements for an issue to be precluded in the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. *See id.*

violation, even if erroneous, are entitled to respect and are not subject to collateral attack." *Id.*

■ In his bankruptcy case, Robert Heghmann challenged the propriety of the March 17th writ of possession and the March 19th attempt to serve the writ, as well as the May 23rd writ of possession and enforcement of that writ. Moreover, the Heghmanns challenged the validity of the March 17th writ of possession and the March 19th attempt to serve the writ in State Court. Similar allegations were made in and dismissed by the federal district court. The Heghmanns did not appeal the dismissal of Robert Heghmann's case, the State Court judgment nor any of the related decisions and, consequently, the judgments are final. Accordingly, the Debtor is barred from relitigating these issues relating to alleged pre-petition violations of the automatic stay in her subsequent bankruptcy case.

### D. Rooker–Feldman Doctrine

■ Even if res judicata does not apply, the Debtor's attempts to challenge the validity of the State Court proceedings are barred by the *"Rooker–Feldman"* doctrine.[7] The *Rooker–Feldman* doctrine prohibits federal courts from reviewing state court judgments. Federal courts are precluded "from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably intertwined' with questions previously adjudicated by a state court, such that the federal district court would be in the unseemly position of reviewing a state court decision for error."

Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir.2003). Therefore, under the *Rooker–Feldman* doctrine, a bankruptcy court, as a lower federal court, cannot review the final judgment of a state court. *See New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.),* 292 F.3d 61 (1st Cir.2002); *see also In re Zambre,* 306 B.R. 428 (Bankr.D.Mass. 2004); *Gomes v. Limieux (In re Limieux),* 306 B.R. 433, 442 (Bankr.D.Mass.2004); *Xytest Corp. v. Mitchell (In re Mitchell),* 255 B.R. 97, 106 (Bankr.D.Mass.2000) (citing *Halvorsen v. Mendez (In re Mendez),* 246 B.R. 141 (Bankr.D.P.R.2000)).

## II. Denial of the Debtor's Request to Return to the Premises

■ The Debtor argues that the bankruptcy court erred in not allowing her to return to the premises after the filing of her bankruptcy petition. Without question, the automatic stay prevents a landlord from pursuing a *post-petition* eviction action against a debtor who has defaulted on her lease. 11 U.S.C. § 362. However, the filing of a bankruptcy petition does not resurrect a lease which was terminated prior to the petition date. *See Bell v. The Alden Owners, Inc.,* 199 B.R. 451, 458 (S.D.N.Y.1996). The bankruptcy estate has no interest in the terminated leasehold interest. *See id.* Furthermore, as discussed above, a state court judgment issued prior to the filing of the bankruptcy case is res judicata in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court. *See id.*

---

**7.** The doctrine takes its name from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is

beyond the original jurisdiction of federal district courts. *See* 263 U.S. at 415–16, 44 S.Ct. 149. *Feldman* held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. *See* 460 U.S. at 486–87, 103 S.Ct. 1303.

The Debtor's Chapter 13 filing neither resurrected the lease nor empowered the bankruptcy court to reconsider the propriety of the State Court's determination. On the contrary, the bankruptcy court was bound by the State Court's judgment and was prohibited from modifying the State Court's determinations pursuant to both the *Rooker–Feldman* doctrine and the doctrine of res judicata. Whatever possessory rights the Debtor had in the property were terminated by the State Court order. Therefore, the Debtor had no interest in the property which could be protected by the automatic stay, and the bankruptcy court did not err in denying the Debtor's request to return to the premises.

### III. Post–Petition Stay Violations

Section 362(a)(1) provides that the filing of a bankruptcy petition automatically stays all post-petition acts against a debtor and property of the debtor's estate, subject to limited exceptions. The automatic stay provides a debtor with one of the fundamental protections under federal bankruptcy law—it gives debtors "breathing room" from the pressures of their creditors. *See Soares*, 107 F.3d at 975. Courts "must display a certain rigor in reacting to violations of the automatic stay." *Id.* at 975–76. Section 362(a)(3) expressly prohibits any post-petition actions by creditors "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The bankruptcy court concluded that Mr. Hafiani willfully violated the automatic stay by selling property of the Debtor's estate at yard sales on July 12 and 19, 2003 with knowledge of the bankruptcy filing. Neither the Appellant nor the Appellees challenge that finding. However, the Appellant challenges the bankruptcy court's findings of damages under 362(h) and we review that finding for abuse of discretion.[8] *See Ocasio*, 272 B.R. at 822.

### A. Damages

 The Bankruptcy Code provides a debtor with remedies for violations of the automatic stay. Where an individual debtor is damaged by a willful violation of the stay, § 362(h) provides for a recovery of damages, costs and attorney's fees. *See* 11 U.S.C. § 362(h).[9] In an appropriate case, an individual debtor may also recover punitive damages. *See id.* The burden is on the debtor to prove by a preponderance of the evidence that she suffered damages as

---

**8.** The Debtor argues that the bankruptcy court erred in "converting" her Motion for Contempt into a motion for damages under § 362(h). Although the bankruptcy court may have the power to punish stay violations under its § 105(a) contempt powers, *see In re Power Recovery Sys., Inc.*, 950 F.2d 798, 802 (1st Cir.1991), the assessment of damages under § 362(h) was a proper remedy and did not prejudice the Debtor. First, the standard under § 362(h) is far less stringent than the standard for determining damages for contempt. *See Shadduck v. Rodolakis*, 221 B.R. 573 (D.Mass.1998) (noting that the standard for determining contempt under § 105(a) requires a showing of malicious intent or lack of good faith, which is not necessary under § 362(h)). Moreover, since the Debtor's Motion for Contempt requested damages for al-

leged violations of the automatic stay, the bankruptcy court did not err in construing the motion in accordance with the relief requested. *See id.*

**9.** Pursuant to § 362(h), an individual injured by any willful violation of the automatic stay is entitled to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, ... punitive damages." 11 U.S.C. § 362(h). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995) (citations omitted).

a result of the stay violation. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 (Bankr.M.D.N.C.1998) ("In a motion for imposition of sanctions under § 362(h), the debtor bears the burden of proof by the preponderance of the evidence"); *In re Flack*, 239 B.R. 155, 162 (Bankr.S.D.Ohio 1999) ("In stay violation litigation, debtors bear the burden of proof to establish by a preponderance of the evidence ... that the debtors suffered damages"). A bankruptcy court's assessment of damages for violation of the automatic stay will be upheld unless it amounts to an abuse of discretion or an erroneous application of the law. *See Ocasio*, 272 B.R. at 822

### 1. Actual Damages

 Under § 362(h), the Debtor was entitled to actual damages for Mr. Hafiani's stay violations. For § 362(h) purposes, actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount. *See In re Sumpter*, 171 B.R. 835, 844 (Bankr.N.D.Ill.1994). Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. *Id.* (citing *Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993)). A damages award cannot be based on mere speculation, guess or conjecture. *Id.* (citing *Adams Apple Distrib. Co. v. Papeleras Reunidas, S. A.*, 773 F.2d 925, 930 (7th Cir.1985)).

 The Debtor has not supplied the Panel with a transcript of the August 12th hearing. Without a copy of the transcript, it is unclear exactly what evidence was presented on the issue of damages and, therefore, the Panel is unable to review the bankruptcy court's findings or rulings on this issue. *See Ramirez v. Puerto Rico Fire Serv.*, 757 F.2d 1357 (1st Cir.1985)

("Where an appellant raises issues that are factually dependent yet fails to provide a transcript of the pertinent proceedings in the [trial] court, this circuit has repeatedly held that we will not review the allegations"); *see also Gowan v. United States*, 148 F.3d 1182, 1192 (10th Cir.) (when appellate record fails to include copies of the documents necessary to decide an issue on appeal, bankruptcy appellate panel is unable to rule on that issue), *cert. denied*, 525 U.S. 1042, 119 S.Ct. 593, 142 L.Ed.2d 535 (1998). Consequently, the Debtor has failed to satisfy her burden of establishing that the bankruptcy court's findings of fact are clearly erroneous and that its legal conclusions regarding damages are contrary to law.

### 2. Punitive Damages

 Pursuant to § 362(h), individuals injured by willful violations of the automatic stay are entitled to recover punitive damages in "appropriate circumstances." *See* 11 U.S.C. § 362(h). The Bankruptcy Code does not attempt to delineate further what this means, leaving it to the sound discretion of the bankruptcy court. However, punitive damages usually require more than mere willful violation of the automatic stay. Relevant factors are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *In re Sumpter*, 171 B.R. at 845 (citation omitted).

Although the case law is far from uniform with respect to when and under what circumstances punitive damages are awarded, courts often limit the imposition of punitive damages to cases where there is " 'egregious, intentional misconduct.' " *See Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir.1991) (quoting *United States v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir.1989)); *see also In*

*re Sumpter*, 171 B.R. at 845 ("Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes"); *Davis v. IRS*, 136 B.R. 414, 424 (E.D.Va.1992) ("Only egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay . . . .").

In addition, some courts also consider the deterrent effect in determining punitive damages. *See, e.g., In re Steenstra*, 280 B.R. 560, 569 (Bankr.D.Mass.2002) ("[P]unitive damages for violation of the automatic stay are often awarded as a deterrent to prevent similar future acts"), *aff'd*, 307 B.R. 732, 738 (1st Cir. BAP 2004); *Ocasio*, 272 B.R. at 825 ("[T]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; . . . [and] . . . the prospect of such change is relevant to the amount of punitive damages to be awarded."); *In re Dunning*, 269 B.R. 357, 363 (Bankr.N.D.Ohio 2001) (deterrent effect of damages remedy of § 362(h) is not limited to violators who had specific intent).

■ The bankruptcy court refused to award punitive damages to the Debtor, finding that "no cause existed to warrant such damages." Considering the evidence before it, the bankruptcy court did not abuse its discretion. As the bankruptcy court noted, the State Court found that cause existed to issue the writ of possession and the Heghmanns did not appeal that decision. Moreover, Mr. Hafiani's actions were taken on the advice of counsel. Although a good faith reliance on the advice of counsel is not a defense to a debtor's claim for actual damages,[10] it is evidence that there was not any "egregious, intentional misconduct" on Mr. Hafiani's

part that warrants an award of punitive damages.

**B. Attorney Indorf**

The Debtor claims that the bankruptcy court erred in concluding that Attorney Indorf's actions as counsel to Mr. Hafiani did not violate the automatic stay. However, as set forth above, the Debtor has failed to supply the Panel with a transcript of the August 12th hearing. Without a copy of the transcript, we are unable to review the bankruptcy court's findings or rulings on this issue. *See Gowan v. United States*, 148 F.3d at 1192.

### *CONCLUSION*

For the reasons set forth above, the decision of the bankruptcy court is AFFIRMED.

---

**10.** *See Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 620 (9th Cir. BAP 1997).